

FILED

07 JAN 31 PM 3:18

CLERK, U.S. BANKRUPTCY COURT
EASTERN DIST. OF CA.
SACRAMENTO, CA.

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

In re:                                    )
                                          )
                                          )   Case No. 97-20145-B-7
JOHN E. PURCELL,                          )
                                          )
                Debtor.                   )   **POSTED ON WEB SITE**
                                          )
_____           )
                                          )
JOHN E. PURCELL,                          )
                                          )   Adversary No. 05-2486
                Plaintiff,                )
                                          )
v.                                        )
                                          )   Submitted September 29, 2006
                                          )   Withdrawn December 27, 2006
SHABBIR A. KHAN, TREASURER AND            )   Resubmitted January 24, 2007
TAX COLLECTOR OF THE COUNTY OF            )
SAN JOAQUIN                               )
                                          )
                Defendant.                )
_____           )

### MEMORANDUM DECISION

Plaintiff John E. Purcell ("Plaintiff") seeks a declaration that a debt for unpaid personal property taxes owed to creditor Shabbir A. Khan, Tax Collector for San Joaquin County ("Defendant"), was discharged in the above-captioned bankruptcy case. Plaintiff also seeks injunctive relief prohibiting Defendant from enforcing the debt and ordering Defendant to release tax liens held against Plaintiff's property. For the reasons explained in this Memorandum Decision, Plaintiff is not entitled to judgment for the relief he seeks, and judgment will be entered in favor of

- 1 -

1  Defendant.

2      This matter came before the court at a pre-trial conference in

3  Sacramento, California on August 23, 2006.  Philip Rhodes, Esq.

4  represented Plaintiff, and Lawrence Meyers, Esq., Deputy County

5  Counsel for San Joaquin County, represented Defendant.  The parties

6  filed an agreed statement of facts on August 17, 2006.  The court

7  requested trial briefs, and the matter was deemed submitted on

8  September 29, 2006; the deadline for the parties' reply briefs.

9      On December 27, 2006, the court withdrew the submission,

10  issued a draft memorandum decision and set the matter for status

11  conference on January 24, 2007.  At the January 24, 2007 status

12  conference, the parties stipulated that certain factual assumptions

13  in the draft memorandum decision were accurate.  Those factual

14  assumptions are set forth below at the end of the factual

15  background.  The matter was re-submitted at the conclusion of the

16  status conference on January 24, 2007.

17      This is a core proceeding and the Court has jurisdiction over

18  this matter. 28 U.S.C. §§ 1334 and 157 (2000).  The following

19  constitutes the Court's findings of fact and conclusions of law

20  pursuant to Federal Rule of Bankruptcy Procedure 7052.

21                        **FACTUAL BACKGROUND**

22      Plaintiff owned a boat that was moored at a marina located in

23  San Joaquin County, California from 1986 through November, 1990.

24  In November, 1990, Plaintiff moved his boat and moored it at a

25  marina located in Alameda County, California.  In or around April,

26  1992, a secured lender repossessed Plaintiff's boat from the marina

27  in Alameda County and sold it at foreclosure.

28                             - 2 -

Defendant levied on an annual basis personal property taxes on the boat for the years 1986 through 1993. Plaintiff did not pay property taxes on the boat for tax years 1986, 1988, 1989, 1991, and 1992, totaling $36,543.91.

On January 6, 1997, Plaintiff, John E. Purcell, doing business as Loadmaster Enterprises, filed the above-captioned bankruptcy case in this court. The case was originally filed under Chapter 13. At the time of the filing, Plaintiff no longer owned the boat, and he did not list Defendant as a creditor in his bankruptcy schedules. Plaintiff converted his case to Chapter 7 on February 23, 1998. A bar date was set for the filing of claims. Plaintiff received a chapter 7 discharge in the above-captioned bankruptcy case on August 27, 1998. The case was closed on August 2, 2002.

In February, 1999, Defendant filed a certificate of delinquency with the San Joaquin County Recorder for $2,177. In July, 2002, Defendant filed another certificate of delinquency for $1,742 with the San Joaquin County Recorder. And in January, 2003, Defendant filed a third certificate of delinquency with the San Joaquin County Recorder for $1,946. Defendant currently asserts that Plaintiff owes San Joaquin County $31,388.55, including interest and penalties, for tax years 1986, 1988, 1989, 1991, and 1992.

Defendant did not receive any court-generated notice of Plaintiff's bankruptcy case, nor did he receive notice or acquire actual knowledge of Plaintiff's bankruptcy case, at any time before Plaintiff received his discharge. During the pendency of Plaintiff's bankruptcy case, the Chapter 7 trustee distributed

- 3 -

1  $2,239.13 on account of the administrative expenses of the

2  bankruptcy estate, and distributed $12,570.71 to unsecured priority

3  claimants Internal Revenue Service and Sacramento County.  The

4  unsecured priority claims in Plaintiff's case totaled $87,559.36.

5  No distribution was made to any secured creditors or to any

6  unsecured, non-priority creditors.

7       The factual assumptions to which the parties stipulated as

8  additional facts are the following.  First, Plaintiff did not own

9  any real property in San Joaquin County as of any lien date that

10 would apply for securing the personal property taxes assessed on

11 Plaintiff's boat.  Second, the secured lender that repossessed

12 Plaintiff's boat in April, 1992, validly foreclosed on the boat in

13 accordance with applicable non-bankruptcy law.  Third, the

14 Plaintiff's boat was a vessel that was subject to California

15 documentation requirements for vessels, and the boat was

16 continually moored in Alameda County from November, 1990, to the

17 date it was sold at foreclosure.  Fourth, Plaintiff failed to pay

18 the taxes only in the years 1986, 1988, 1989, 1991, and 1992.

19                              **Analysis**

20      In order to resolve this matter, the court must first address

21 the nature of Defendant's tax claims.  The court will then address

22 whether Defendant's tax claims are excepted from the discharge in

23 Plaintiff's bankruptcy case under 11 U.S.C. Section 523(a)(3).

24 Finally, the court will address Defendant's collection rights in

25 light of Plaintiff's request for injunctive relief requiring

26 Defendant to release its tax liens.

27 **I. Defendant's Claims Would Have Been Non-Priority Unsecured Claims**

28                              - 4 -

1    Plaintiff asserts that Defendant's claims would not have been

2   entitled to secured or priority unsecured status in Plaintiff's

3   bankruptcy case.   Defendant asserts that at the time Plaintiff's

4   bankruptcy case was filed, Defendant held a secured claim.   For the

5   reasons set forth in this Part the court finds that if Plaintiff

6   had properly scheduled the tax debt, Defendant would have held a

7   non-priority, unsecured claim in the bankruptcy case.

8        **A. Defendant's Claims Would Not Have Been Secured Claims**

9        Defendant argues that, as taxes were levied on Plaintiff's

10   boat in tax years 1986, 1988, 1989, 1991, and 1992, a tax lien

11   attached to the boat as of March 1st in each of those years pursuant

12   to California Revenue and Taxation Code Section 2192[1].   Section

13   2192 stated, for the years in question, that "all tax liens attach

14   annually as of 12:01 a.m. on the first day of March preceding the

15   fiscal year for which the taxes are levied."   Cal Rev. & Tax Code §

16   2192 (West 1998).   Defendant contends that Section 2192 created a

17   tax lien on Plaintiff's boat on March 1 of 1986, 1988, 1989, 1991

18   and 1992[2].

19        Defendant also cites Revenue and Taxation Code Section 2191.3,

20   which allows the tax collector to record a notice of delinquency,

21   the recording of which constitutes a lien upon all of the debtor's

22   personal and real property in San Joaquin county pursuant to

23   ────────────────────

24       [1]   A 1995 amendment to California Revenue and Taxation Code
     Section 2192 substituted "January" for "March" following the words "on
25   the first day of."   This change does not affect the taxes in question.

26       [2]   Defendant fails to explain how a tax lien on the boat that
     would be relevant for this bankruptcy case could have been created in
27   1991 or 1992, after Plaintiff's secured lender sold the boat at
     foreclosure.

28                                  - 5 -

Section 2191.4.  Defendant argues that Sections 2191.3, 2191.4, and 2192 work together to create a tax lien on all of Plaintiff's property in the County of San Joaquin as of each March 1st preceding the tax year for which the delinquent taxes were assessed, even though the first certificate of delinquency was not recorded until 1999.

The court concludes that Defendant is mistaken and that Defendant did not have any secured claim prior to or at the time of the filing Plaintiff's bankruptcy case.  Defendant misreads the provisions of the California Revenue and Taxation Code, particularly regarding how tax liens on personal property arise in California.

The California Revenue and Taxation Code provides for the assessment and collection of both secured and unsecured taxes. Property taxes in California may be assessed either on the "secured roll" or the "unsecured roll."  See Cal. Rev. & Tax Code § 109 (West 1998).  "The 'secured roll' is that part of the roll containing State assessed property and property the taxes on which are a lien on real property sufficient, in the opinion of the assessor, to secure payment of the taxes.  The remainder of the roll is the 'unsecured roll.'" Id.  "State assessed property" is that property which is assessed by the California State Board of Equalization pursuant to Revenue and Taxation Code Section 721, and includes the property specified in Section 19 of Article XIII of the California Constitution and any legislative authorization thereunder.

Whether a tax is secured or unsecured depends on the nature of

the tax and the nature of the property against which the tax is
assessed.  "It is settled law in this state that the lien of a
property tax exists only by virtue of statute and that taxes are
not a lien on the property assessed unless expressly made so by
statute."  T.M. Cobb Co. v. County of Los Angeles, 16 Cal. 3d 606,
618, 547 P.2d 431, 438 (1976).  For real property in California,
such a statute exists: "Every tax on real property is a lien
against the property assessed."  Cal. Rev. & Tax Code § 2187 (West
1998).  The Revenue and Taxation Code does not, however, provide
that a tax on personal property constitutes an automatic lien on
the property assessed.  T.M. Cobb, 16 Cal. 3d at 618.

Under certain circumstances, a tax lien securing taxes
assessed against personal property may be created against the
taxpayer's real property.  A tax on personal property may be a lien
on any real property on the secured roll also belonging to the
owner of the personal property, if the personal property is located
upon that real property on the lien date.  Cal. Rev. & Tax Code §
2189 (West 1998).  A lien on the taxpayer's real property may also
arise if the personal property taxed is located in the same county
as the taxpayer's real property on the secured roll.  Cal. Rev. &
Tax. Code § 2189.3 (West 1998).  The Revenue and Taxation Code
creates no lien that attaches as of the time specified in Section
2192 for taxes levied on personal property when the subject
personal property is not secured or "cross secured" in this fashion
by real property.  See Board of Supervisors v. Lonergan, 27 Cal. 3d
855, 859, 616 P.2d 802, 804 (1980).

Even though personal property taxes not secured or cross-

- 7 -

secured by the taxpayer's real property do not enjoy the benefit of

an automatic tax lien against the property assessed, the tax

collector has four available methods for collection of unpaid taxes

on the unsecured roll.  First, pursuant to Revenue and Taxation

Code Section 3003, the county may sue the taxpayer in a civil suit

in his own name for the recovery of delinquent taxes or

assessments, with penalties and costs.  Second, pursuant to Revenue

and Taxation Code Section 3101, the tax collector may file with the

county clerk a certificate setting forth the facts described in

Section 3101 and obtain summary judgment against the taxpayer

without a hearing.  Cal. Rev & Tax Code 3102 (West 1998).  Third,

pursuant to Revenue and Taxation Code Section 2951, the tax

collector may seize and sell any personal property, improvements,

or possessory interests belonging or assessed to the assessee.  See

Cal. Rev & Tax Code §§ 2951-2963 (West 1998).

Fourth and finally, pursuant to Revenue and Taxation Code

2191.3, the tax collector may record a certificate of delinquency.

Recording such a certificate constitutes a lien upon all of the

debtor's personal and real property in the county where the

certificate is recorded and has the force, effect, and priority of

a judgment lien.  Cal. Rev & Tax Code § 2191.4 (West 1998).

Section 2191.4 also clearly states that the lien attaches "from the

time of the filing of the certificate for record pursuant to

Section 2191.3."  Cal Rev. & Tax Code § 2191.4 (West 1998)

(emphasis added).

In conjunction with those unsecured tax collection methods,

for vessels that are delinquent in property taxes the tax collector

- 8 -

may also notify the owner of the vessel that renewal of the
vessel's certificate number will be withheld by the Department of
Motor Vehicles until the delinquent taxes have been paid.   Cal.
Rev. & Tax. Code § 3205 (West 1998).

Applying the statutes discussed above to the facts of this
case, the court concludes that at the time that Plaintiff's
bankruptcy case was filed, Defendant had no secured claim against
Plaintiff.   Plaintiff's boat was not State assessed property.
Defendant assessed property taxes on Plaintiff's boat between 1986
and 1993.   Plaintiff did not pay taxes in five of those years.
Because Plaintiff owned no real property in San Joaquin County as
of the lien date for the personal property taxes,[3] the taxes were
not secured by a lien against Plaintiff's real property.
Therefore, no tax lien against Plaintiff's real property arose by
operation of law in the years the taxes were assessed.

Liens against all of Plaintiff's personal and real property
located in San Joaquin County could have arisen under state law
only as of February, 1999, July, 2002, and January, 2003, and, more
specifically, on the exact dates on which the tax collector
recorded certificates of delinquency with the San Joaquin County
Recorder.   Those liens would have been created after Plaintiff's
bankruptcy case was filed on January 6, 1997.   Claims in bankruptcy
are determined as of the petition date.   See 11 U.S.C. 502(b)
(2000).   Defendant had no lien on Plaintiff's personal or real
property at the time Plaintiff's bankruptcy case was filed, and

---

[3] Furthermore, after November, 1990, the boat was not moored in
San Joaquin County.

- 9 -

thus no secured claim would have been allowed in Plaintiff's
bankruptcy case.

### B. Defendant's Claims Would Not Have Been Priority Claims.

If Plaintiff had properly scheduled the tax debt in his
bankruptcy filings, notice of the bankruptcy case would have been
given to Defendant.  If Defendant had properly and timely filed a
claim, that claim would not have been entitled to priority status
under 11 U.S.C. Section 507.  Section 507(a)(8)(B) gives priority
status to the allowed unsecured claims of government units, but if
the basis of the claim is a property tax, it must be assessed
before the commencement of the case and be last payable without
penalty after one year before the date of the filing of the
petition.  Pursuant to Revenue and Taxation Code Section 2922(a),
taxes on the unsecured roll as of July 31 of the year in which the
taxes are due are delinquent at 5:00 p.m. or the close of
business[4], whichever is later, on August 31.  Thereafter, the taxes
are subject to a delinquent penalty of ten percent.  Here, as the
latest unpaid personal property taxes assessed against Plaintiff's
boat were last payable without penalty on August 31, 1992, they
were not payable without penalty after one year before the filing
of Plaintiff's bankruptcy petition.

Thus, at the time Plaintiff's bankruptcy case was filed,

---

[4] A 1990 Amendment to the Revenue and Taxation Code provided that
taxes could be paid by the close of business.  <u>See</u> Cal. Rev. & Tax
Code § 2922(a) (West 1998).

1  Defendant held only non-priority unsecured claims.[5]   During the
2  bankruptcy case the Chapter 7 trustee recovered assets allowing a
3  distribution of $12,570.71 to priority unsecured claims.  As the
4  total of all priority unsecured claims was $87,559.36, there was no
5  distribution to non-priority unsecured claims.  If Plaintiff had
6  scheduled the tax debt in his filings, Defendant, as a non-priority
7  unsecured creditor, would have received nothing from the estate.

8      Although the nature of Defendant's claims in this case would
9  have prevented him from receiving a distribution from the chapter 7
10  estate if Defendant had been scheduled as a creditor, the nature of
11  the claims is relevant to the issue of whether Plaintiff's
12  liability on the claims was discharged.

13              **II. Plaintiff's Tax Debt Was Not Discharged**

14      Plaintiff's tax debt owed to Defendant is excepted from

15

16      [5] The court notes that Defendant's claim for taxes that were not
17  paid in tax years 1991 and 1992 is questionable, as the boat was not
    moored in San Joaquin County after November, 1990.  Pursuant to
18  Article 13, Section 14 of the California Constitution, all property
    taxed by local government shall be assessed in the county, city, and
19  district in which it is located.  "It is plainly the general policy
    of the law that property situated in one county or city should be
20  taxable in that county or city for local purposes for its actual
    value, and that that local subdivision alone should have the benefit
21  of this value for the purpose of raising its revenue." City of Rancho
    Cucamonga v. Mackzum, 228 Cal. App. 3d 929, 940 46 Cal. Rptr. 2d 448,
22  454 (1991)(emphasis added).  Pursuant to Revenue and Taxation Code
    Section 1139, "when the owner or master of a taxable vessel gives
23  written notice of its habitual place of mooring when not in service
    to the assessor of the county where the vessel is documented, the
24  vessel shall be assessed only in the county where habitually moored."
    Despite the implication of Section 1139 that when no written notice
25  is given to the county assessor the vessel shall be assessed in the
    county where the vessel is documented, the California Court of Appeal
26  has held that the vessel shall be taxed in the county where it is
    habitually moored.  See Smith-Rice Heavy Lifts, Inc. v. Los Angeles
27  County, 256 Cal. App. 2d 190, 200-201, 63 Cal. Rptr. 841, 848 (Cal.
    Ct. App. 1967).

28                              - 11 -

1  discharge pursuant to 11 U.S.C. Section 523(a)(3)(A).  Therefore,

2  Plaintiff has failed to carry his burden of establishing

3  entitlement to injunctive relief prohibiting Defendant from

4  enforcing the debt.

5      Plaintiff did not schedule the tax debt owed to Defendant in

6  his bankruptcy filings.  Generally, Section 523(a)(3)(A) excepts

7  from discharge unscheduled debts that are not of the type described

8  in Sections 523(a)(2), (a)(4) or (a)(6), where the creditor had no

9  notice or actual knowledge of the case in time to file a timely

10  proof of claim.  The unscheduled debt here, for unpaid personal

11  property taxes, is not of the type described in Sections 523(a)(2),

12  (a)(4) or (a)(6).

13      The Ninth Circuit recognizes an exception to the operation of

14  Section 523(a)(3) in no-asset cases where no bar date has been set

15  for filing proofs of claim.  See Beezley v. California Land Title

16  Co. (In re Beezley), 994 F.2d 1433 (1992).  The Ninth Circuit in

17  that case held that in no-asset, no bar-date cases, "after such a

18  case has been closed, dischargeability is unaffected by scheduling,

19  amendment of [the debtor's] schedules would thus have been a

20  pointless exercise. . . . If the omitted debt is of a type covered

21  by 11 U.S.C. § 523(a)(3)(A), it has already been discharged

22  pursuant to 11 U.S.C. § 727. . . . In sum, reopening here in order

23  to grant [the debtor's] request would not have 'accord[ed] relief

24  to' [the debtor]."  Beezley, 994 F.2d at 1434 (citations omitted).

25      In no-asset chapter 7 cases, no bar date is set for filing

26  proofs of claim.  As a result, creditors cannot be deprived of the

27  right to file a timely proof of claim, since the absence of a bar

28  

date means that no claim will be considered untimely, regardless of when it is filed.  In such situations, Section 523(a)(3) is never implicated, because no creditor will be deprived of the right that it protects.  See Beezley, 994 F.2d at 1436-37 (O'Scannlain, J., concurring).

The facts of this case are distinguishable from those in Beezley.  Here, assets were available to the trustee and a bar date was set for claims.  Plaintiff did not schedule the tax debt, so Defendant never received any court-generated notice of Plaintiff's bankruptcy case, and Defendant did not receive notice or acquire actual knowledge of Plaintiff's bankruptcy case in time to file a timely proof of claim.

Plaintiff argues that the rationale in Beezley should be extended to cover the present facts and allow the debt to be discharged.  Plaintiff argues that the right protected by Section 523(a)(3)(A) is, ultimately, the right of a creditor to receive a dividend or payment from the distribution of the bankruptcy estate's assets.  Plaintiff argues that even if he had scheduled the tax debt, Defendant would have received nothing from the distribution of the estate's assets, since Defendant did not have either a secured or priority claim; as a result, Defendant suffered no prejudice by Plaintiff's failure to schedule the debt.  Plaintiff urges the court to use its equity powers to shield him from the operation of Section 523(a)(3)(A) and discharge the debt, as Plaintiff asserts that its omission from his schedules was a harmless error.

As discussed in Part I, supra, Plaintiff is correct in

- 13 -

1  asserting that if he had scheduled the tax debt when he filed his
2  case in time to allow Defendant to file a proof of claim, Defendant
3  would have received nothing from the estate.  In chapter 7 cases
4  like Plaintiff's in which a bar date is set, however, courts are
5  divided on the circumstances under which Section 523(a)(3) should
6  apply.  In Ninth Circuit courts, both a liberal rule and a strict
7  interpretation approach have been followed.

8       The Ninth Circuit case that is most often cited for the strict
9  interpretation of Section 523(a)(3) is Laczko v. Gentran (In re
10 Laczko), 37 B.R. 676 (9th Cir. B.A.P. 1984) aff'd without opinion,
11 772 F.2d 912 (9th Cir. 1985)(table).  The Ninth Circuit Bankruptcy
12 Appellate Panel in Laczko decided the issue of whether in a no-
13 asset case a debt owed to a creditor that had been added to the
14 debtor's schedules after the deadline for timely filing a proof of
15 claim had passed could be discharged where the failure to schedule
16 the creditor earlier was mistaken or inadvertent and the creditor
17 had no notice or actual knowledge of the case.  The Laczko court
18 held that the debt was not discharged.  The court reasoned that in
19 no-asset, no-bar date cases, Section 523(a)(3) is "never
20 triggered," but when a bar date is set and an unscheduled creditor
21 is deprived of the right to file a timely proof of claim, the plain
22 language of Section 523(a)(3) should be followed.  See Id. at 678-
23 79.  "'[H]e who seeks the protection of a statutory bar against
24 payment of his debts is required to bring himself within the
25 provisions of the statutory grant.'"  Id. at 678 (quoting Milando
26 v. Perrone, 157 F.2d 1002, 1004 (2nd Cir. 1946)).

27      The Laczko decision has been followed by other Ninth Circuit

28                                - 14 -

courts.   In In re Bosse, 122 B.R. 410 (Bankr. C.D. Cal. 1990) a
creditor who did not have actual notice of the bankruptcy case such
that he could timely file a proof of claim was mistakenly omitted
from the debtor's schedules.   The record in the bankruptcy case at
the time that Bosse was decided also indicated that there were
assets to be administered in the case.   The Bosse court held that
the provisions of Section 523(a)(3)(A) should be strictly construed
and would not except the debt from discharge.   Following Laczko,
the Bosse court "was unpersuaded that it should go beyond the
unambiguous language of section 523(a)(3)(A)."   Id. at 415.
"Section 523(a)(3), as written, may indeed produce harsh
consequences which courts have struggled to avoid.   This may be
especially true in light of the policy in favor of a fresh start
for the debtor.   However, bankruptcy courts, as courts of equity,
must follow express statutory authority to the same extent as
courts of law."   Id. at 416.   See also In re Corgiat, 123 B.R. 388,
392 (Bankr. E.D. Cal. 1991)("Where . . . a claims bar date has been
set and has expired without a claim having been filed by the
omitted creditor, the only remaining issue under either subsection
(A) or (B) of § 523(a)(3) is whether the omitted creditor . . . had
sufficient notice or actual knowledge of the bankruptcy proceedings
in time to file a timely proof of claim.").

        Bosse also rejected the debtor's argument that Section
726(a)(2)(C) justified discharge of the debt because it prevented
prejudice to the creditor by allowing the creditor to file a tardy
proof of claim and still participate in a distribution with other
unsecured creditors.   The court remarked that adopting the debtor's

- 15 -

reasoning would render the provisions of Section 523(a)(3)

"meaningless." Id. at 416.

> Instead, section 726(a)(2)(C) supplements the relief
> provided an omitted creditor under section 523(a).
> Section 726(a)(2)(C) permits a creditor who holds a
> nondischargeable claim to share in the distribution of
> assets, to the extent there are any, providing some
> immediate payment and limiting the potential for
> shortfall should collection efforts against the debtor
> fail or prove difficult outside of bankruptcy.

Id. at 416.

Other Ninth Circuit courts have declined to follow the strict interpretation approach of Laczko and have adopted a liberal rule that recognizes an equitable exception to the application of Section 523(a)(3). This approach has emerged from the Fifth Circuit Court of Appeals decision in Robinson v. Mann, 339 F.2d 546 (5th Cir. 1964). See also Stone v. Caplan (In re Stone), 10 F.3d 285 (5th Cir. 1994). Under Robinson, a court should look to whether exceptional circumstances exist that appeal to the equitable discretion of the bankruptcy court. Robinson, 339 F.2d at 550. Whether exceptional circumstances exist depends on the justification offered for the failure to list the omitted creditor, the circumstances attendant to that failure, the degree of disruption that would flow from allowing amendment of the filings, and whether any creditor including the omitted one would be prejudiced by excepting the omitted debt from discharge. Id.

The bankruptcy court for the district of Alaska followed the Robinson approach in In re Brosman, 119 B.R. 212 (Bankr. D. Alaska 1990). Brosman argued that Laczko was not binding precedent, that it failed to reconcile Section 523(a)(3) with Section 726(a)(2)(C),

1  and that the Fifth Circuit's view in <u>Robinson</u> represented a better-
2  reasoned approach in that it allowed an honest but mistaken debtor
3  a fresh start.  <u>Brosman</u> involved a no-asset case in which a bar
4  date had been set for filing proofs of claim, and the debtor
5  mistakenly or inadvertently omitted from his schedules a creditor
6  that had no notice or actual knowledge of the case.  The <u>Brosman</u>
7  court noted that <u>Laczko</u> was affirmed by the Ninth Circuit, but, as
8  it was affirmed without opinion and not intended for publication,
9  was never intended as precedent.

10      As stated above, the <u>Brosman</u> court found that <u>Laczko</u> failed to
11  reconcile Section 523(a)(3) with Section 726(a)(2)(C).  Unlike the
12  <u>Bosse</u> court, the <u>Brosman</u> court concluded that Section 523(a)(3) was
13  inconsistent with Section 726(a)(2), as Section 523(a)(3) does not
14  distinguish between claims that are not timely filed and tardily
15  filed unsecured claims that may still receive the same treatment as
16  timely filed unsecured claims if they are filed in time to permit
17  payment.  <u>Brosman</u> reasoned that the lack of prejudice to an omitted
18  creditor who tardily files an unsecured claim is especially
19  apparent in a no-asset case, as even the creditor who tardily files
20  will have filed in time to participate in a distribution that has
21  not occurred.  Further, if a creditor tardily files a proof of
22  claim and the trustee later recovers assets to be distributed to
23  creditors, the tardy creditor will receive the same treatment as
24  those who timely filed.  See <u>Brosman</u>, 119 B.R. at 214-16.

25      <u>Brosman</u> further concluded that Laczko's failure to reconcile
26  Section 523(a)(3) with Section 726(a)(2) led to "an unnecessarily
27  harsh result to the debtor for no substantive reason" as it

28                                  - 17 -

"fail[ed] to allow an honest but mistaken debtor a fresh start."
Id. at 215.   Thus, Brosman's approach was to shield the debtor from
the strict language of Section 523(a)(3) where the debtor's
omission of the debt was mistaken or inadvertent, there was no
fraud or intentional laches, and the creditor was not prejudiced by
the omission.   Other Ninth Circuit courts have adopted the "liberal
rule" approach of Robinson and Brosman.   See In re Bowen, 102 B.R.
752 (9th Cir. B.A.P. 1989); In re Kuhr, 132 B.R. 421 (Bankr. E.D.
Cal. 1991).

This court, however, declines to follow that approach in this
case.   This court agrees with the reasoning in Laczko that Section
523(a)(3) is never triggered when no bar date is set, but that in
cases in which a bar date is set, the plain language of Section
523(a)(3) controls.

First, this case is distinguishable from those cases allowing
an equitable exception to section 523(a)(3), as no court that has
followed Robinson v. Mann has extended its reasoning to cases in
which a bar date was set and there were assets to be distributed to
creditors.

Second, the court agrees with the rationale in Bosse that
Sections 523(a)(3) and 726(a)(2)(C) are not coextensive or
inconsistent.   The former section provides that certain debts are
not discharged and may therefore be collected by the creditor
outside the bankruptcy case notwithstanding the debtor's receipt of
a discharge.   The latter provides that certain debts may
participate in distributions from the bankruptcy estate.   The court
agrees with Bosse that the fact that Congress chose to allow

- 18 -

1 participation in dividends from the bankruptcy estate by claims
2 that are also excepted from the discharge does not compel the
3 conclusion that the debts cannot or should not also be excepted
4 from the discharge.  The court further notes that Congress
5 apparently intended to mitigate the effect of Section 523(a)(3) by
6 allowing partial or complete satisfaction of certain claims through
7 the bankruptcy case, achieving not only supplemental relief to the
8 omitted creditor, but also minimizing or eliminating negative
9 impact on the debtor's fresh start.  Doing so does not show that
10 Congress did not mean what it said in Section 523(a)(3).

11      Third, the law is clear that the court's equitable powers can
12 only be exercised in furtherance of statutory provisions, not in
13 derogation of such provisions.  As the United States Supreme Court
14 has stated, "whatever equitable powers remain in the bankruptcy
15 courts must and can only be exercised within the confines of the
16 Bankruptcy Code."  Norwest Bank Worthington v. Ahlers, 485 U.S.
17 197, 206 (1988).  See also Powerline Oil Co. v. Koch Oil Co. (In re
18 Powerline Oil Co.), 59 F.3d 969, 973 (9th Cir. 1995)("Equity may not
19 be invoked to defeat clear statutory language, nor to reach results
20 inconsistent with the statutory scheme established by the Code.").

21      Finally, even if the court could exercise its equitable powers
22 to create an equitable exception to Section 523(a)(3), it would
23 decline the opportunity because to do so would further expand the
24 reach of the exception adopted by those courts that have followed
25 Robinson v. Mann and would deprive the omitted creditor of
26 important rights.  Plaintiff's argument suggests that the only
27 rights protected by Section 523(a)(3) are the right of a creditor

28                          - 19 -

to file a timely proof of claim and the right to receive a dividend or distribution from the bankruptcy estate.  Those rights are among those protected by Section 523(a)(3), but the statute effectively protects other rights as well.  The right of a creditor to receive a dividend or distribution from the bankruptcy estate extends from the creditor's right to <u>participate</u> in the distribution of estate assets.  The right of participation in the distribution encompasses rights other than the right to receive a distribution or dividend. For example, a creditor with notice of the bankruptcy who files an allowed claim would have the right to object to the claims of other creditors and attempt to increase the available distribution for his own benefit.  Similarly, creditors with notice of the bankruptcy have the right to timely object to the debtor's discharge or to the dischargeability of their particular debts and may thereby attempt to increase the likelihood of a recovery of the debt outside of bankruptcy.  Creditors with notice of the bankruptcy also have the right to object to the trustee's administration of estate assets and the expenses incurred in doing so.  These rights are unaffected by the likelihood that the creditor would receive a dividend or distribution from the estate, but they are compromised if the creditor is not given notice of the debtor's bankruptcy case.

To invoke an equitable exception to Section 523(a)(3) and extend it to cases like Plaintiff's also runs counter to the policy of ensuring a fair and equitable distribution of the bankruptcy estate.  Creditors often play a role in gathering and transmitting information about the bankruptcy case to the trustee, other

- 20 -

creditors and the court.   As creditors seek to assert and protect
their rights and interests as against the debtor, the bankruptcy
estate and other creditors, they also furnish the bankruptcy court
with information that allows the court to render decisions that
result in both a fair and equitable distribution of the assets of
the bankruptcy estate to creditors and affords the debtor a fresh
start that is justly earned.   Creditors can thus assist in the
proper functioning of the bankruptcy system.   To create an
exception that might encourage debtors to schedule creditors
selectively on the basis of a hypothetical distribution of assets
undermines both this function of the creditor and the goals of the
Bankruptcy Code.

### III. Defendant Is Not Entitled to Injunctive Relief Requiring Defendant to Release Its Tax Liens

Having found that Defendant would have held only a non-
priority unsecured claim in Plaintiff's bankruptcy case and that
Plaintiff's tax debts are not discharged, the court now addresses
Plaintiff's request for injunctive relief and Defendant's
collection rights.   Plaintiff has not carried his burden of
establishing entitlement to injunctive relief requiring Defendant
to release its tax liens.

Defendants's first two post-petition attempts to obtain liens
by recording certificates of delinquency with the San Joaquin
County Recorder were ineffective to the extent that the liens would
have attached to property of the bankruptcy estate.   Defendant's
recordings in February, 1999 and July, 2002 were made between the
time Plaintiff filed his bankruptcy petition on January 6, 1997,

- 21 -

and the time that the trustee was discharged from the case and the case was closed on August 2, 2002.  Thus, the automatic stay remained in effect as to property of the estate when those recordings were made.  See 11 U.S.C. §§ 362(c)(1) and 554(c) (2000).

Pursuant to 11 U.S.C. § 362(a)(4), "any act to create, perfect, or enforce any lien against property of the estate" is stayed.  Creditor actions in violation of the automatic stay are void.  In re Schwartz, 954 F.2d 569, 571 (9th Cir. 1992), Parker v. Bain, 68 F.3d 1131, 1138 (9th Cir. 1995), Snavely v. Miller (In re Miller), 397 F.3d 726, 729 (9th Cir. 2005).  Therefore, the liens that arose as the result of the filing of the certificates of delinquency in February, 1999 and July, 2002 are void to the extent that they would have attached to property of the bankruptcy estate.  However, no evidence has been presented from which the court can determine that the liens purportedly created by Defendant's first two recordings would only have attached to property of the bankruptcy estate.  Therefore, Plaintiff has failed to carry his burden of establishing entitlement to injunctive relief requiring Defendant to release the tax liens that may have been created by those recordings.

For reasons stated in Part II, supra, Plaintiff's tax debt to Defendant was not discharged.  As a result, Defendant's third recorded certificate of delinquency, recorded in January 2003 after the close of the bankruptcy case, was unaffected by the automatic stay or the discharge injunction of 11 U.S.C. Section 524.  The tax lien created by the third certificate therefore remains in effect

- 22 -

to the extent that it is properly recorded.  Therefore, Plaintiff has failed to carry his burden of establishing entitlement to injunctive relief requiring Defendant to release the tax lien that was created by the third recording.

The court's rulings regarding Defendant's collection rights are without prejudice to Defendant's ability to collect the unpaid taxes through continued use of the procedures described in Revenue and Taxation Code Sections 2191.3 and 2191.4.  The court is aware of no statutory authority limiting the time in which the Defendant may file additional certificates of delinquency or extend the lien pursuant to Revenue and Taxation Code Section 2191.4.

## Conclusion

For the foregoing reasons, Plaintiff is entitled to no relief by reason of the complaint.  Judgment shall be entered in favor of Defendant declaring that the debt validly owed[6] by Plaintiff to Defendant for unpaid personal property taxes in tax years 1986, 1988, 1989, 1991, and 1992 are excepted from discharge in the above-captioned bankruptcy case pursuant to 11 U.S.C. Section 523(a)(3)(A).  The court will issue a separate judgment that complies with Bankruptcy Rule 9021.

Dated:   JAN 3 1 2007

THOMAS C. HOLMAN
UNITED STATES BANKRUPTCY JUDGE

---

[6] Nothing in this decision prevents Plaintiff from contesting the validity of any assessment under State law.

- 23 -

**CERTIFICATE OF MAILING**

I,                    , in the performance of my duties as Deputy
Clerk to the Honorable Thomas C. Holman, mailed by ordinary mail a
true copy of the attached document to each of the parties listed
below:


DATE:


_____
Deputy Clerk

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

CERTIFICATE OF MAILING

The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was mailed today to the following entities listed at the address shown on the attached list or shown below.

Kimberlee Gerton
2240 Doulgas Blvd #290
Roseville, CA 95661

Lawrence Meyers
222 E Weber Ave #711
Stockton, CA 95202

John Purcell
9200 Camden Ln
Elk Grove, CA 95624

Shabbir A. Khan
c/o Lawrence Meyers
222 E Weber Ave #711
Stockton, CA 95202

US Trustee
501 I St #7-500
Sacramento CA  95814

DATED:  02/01/07

By: _____
                    Deputy Clerk

EDC 3-070 (New 4/21/00)